**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SHERRON CONNELL,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION 11-0443-WS-C** |
| | ) |
| **CITIMORTGAGE, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 36) and plaintiff's corresponding Motion for Summary Judgment (doc. 39). Both Motions have been extensively briefed (including multiple notices of supplemental authority (docs. 52-54), which the Court has reviewed).[1] The cross-motions for summary judgment are now ripe for disposition.[2]

---

[1]     In the Court's discretion, Defendant's Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority (doc. 55) is **granted**. The Court will consider defendant's brief response addressing the *Foley v. Wells Fargo Bank, N.A.* decision, which response is appended to that Motion as Exhibit A. The Court also notes, however, that more recent developments in *Foley* (see 2012 WL 4829124 (S.D. Fla. Sept. 28, 2012)) were not briefed at all.

[2]     Accompanying their legal memoranda, the parties have collectively submitted more than 2,000 pages of exhibits (including multiple copies of numerous exhibits). Many (if not most) of these documents are not cited or discussed in any meaningful way in the briefs; therefore, it is unclear why the parties have included them or what they expect the Court to glean from such a cluttered summary judgment record. This course of action is particularly mystifying given the straightforward nature of the underlying facts. Insofar as the parties might expect the undersigned *sua sponte* to review these myriad documents page by page, formulate the parties' unstated arguments for how they might bear on legal issues joined in the Rule 56 motions, and rely on such materials in adjudicating said motions, all without guidance or elaboration by the parties, they are mistaken. *See* Rule 56(c), Fed.R.Civ.P. (clarifying that parties must support their factual positions on summary judgment by "citing to particular parts of materials in the record" and that the court "need consider only the cited materials"); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who (Continued)

I.      **Nature of the Action.**

Although the parties' voluminous briefs and exhibits weave a tangled factual and legal web, it bears emphasis that the underlying claim and circumstances are straightforward. Plaintiff, Sherron Connell, and her then-husband borrowed money from non-party First Federal Bank in order to purchase a home in Mobile, Alabama.  To secure the loan, the Connells granted a mortgage to a non-party known as MERS, in its capacity as nominee for First Federal.  Shortly after that initial transaction, First Federal sold the loan to defendant, CitiMortgage, Inc. ("Citi"). Connell claims that "[o]n July 12, 2010, ownership interest in the Plaintiff's mortgage and note was assigned to Citi."  (Doc. 2, ¶ 6.)  The sole basis of Connell's lawsuit is her claim that when "Citi received by assignment a[n] ownership interest in [her] mortgage and note," it was required to notify her of that ownership interest within 30 days, but failed to do so.  (*Id.*, ¶¶ 10-15.) Accordingly, Connell alleges that Citi violated the Truth in Lending Act ("TILA"), which provides in pertinent part that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."  15 U.S.C. § 1641(g). Everyone agrees that Citi made no such disclosure to Connell.  The two competing Rule 56 Motions, and the considerable briefing accompanying same, are devoted to the singular issue of whether Citi owed a disclosure obligation to Connell under TILA.

Section 1641(g) was added to TILA in 2009, with an effective date of May 20, 2009, and is not retroactive.[3]  Thus, a critical issue in this case is whether Connell's loan was transferred to

---

comb the record of previously available evidence and make a party's case for it"); *Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1314 n.2 (S.D. Ala. 2011) ("The Court will not scour uncited portions of the summary judgment record for evidence that might bolster either side's arguments.").

[3]      In particular, § 1641(g) was part of the Helping Families Save their Homes Act of 2009 enacted by Congress to address catastrophic, systemic failures in the nation's housing market.  The effective date of that Act was May 20, 2009.  *See* Pub.L. No. 111-22, § 404, 123 Stat. 1632 (May 20, 2009).  Section 1641(g) is not retroactive.  *See, e.g., Foley v. Wells Fargo Bank, N.A.*, 2012 WL 4829124, *2 (S.D. Fla. Sept. 28, 2012) ("§ 1641(g) was enacted in May 2009 and does not apply retroactively"); *Eng v. Dimon*, 2012 WL 2050367, *1 (N.D. Cal. June 6, 2012) (§ 1641(g) "was not added to TILA until 2009 and does not apply retroactively to conduct occurring before its effective date"); *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp.2d 340, 353 (Continued)

Citi after that effective date.  Another important, related question concerns the nature, scope and effect of a transfer between non-party Mortgage Electronic Registration Systems, Inc. ("MERS") and Citi that took place on July 12, 2010.  Based on these and other issues, the parties have filed cross-motions for summary judgment, asking this Court to determine whether Connell's § 1641(g) claim may be resolved as a matter of law at this juncture or whether genuine issues of material fact remain for trial.  Although there are many sub-issues and detours, the ultimate question presented is whether the July 12, 2010 transaction imposed a disclosure obligation on Citi to Connell under § 1641(g).  The Court answers this question in the negative.

## II.   Relevant Factual Background.[4]

### A.   *The Underlying Loan Transaction.*

On June 13, 2008, Connell and her then-husband signed a promissory note (the "Note") in which they promised to repay First Federal the sum of $209,216.00 plus interest, accruing at an annual rate of 6.125%.  (Hall Aff. (doc. 37, Exh. 3), ¶ 4 & Exh. 1.)  The Note was secured by a mortgage (the "Mortgage") executed by the Connells for the residential real property located at 9498 Labrador Run N., Mobile, AL 36695 (the "Property").  (Doc. 40, Exh. 1; Hall Aff., ¶ 5 & Exh. 2.)  The Mortgage identified First Federal as the "Lender," but provided that "[t]his Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender … and Lender's successors and assigns) as mortgagee."  (Doc. 40, Exh. 1, at 1.)  The Mortgage further provided that the Connells "mortgage[d], grant[ed] and convey[ed] to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale," the Property.  (*Id.*)  In the Mortgage, the Connells agreed that "MERS holds only legal title to the interests granted by [the Connells] in this Security Instrument," but that "MERS, (as nominee for Lender and Lender's successors

---

(E.D. Va. 2011) (recognizing that "[n]othing in TILA indicates that this provision should be applied retroactively" and that there is a "well-established presumption against retroactivity").

[4]   To evaluate Citi's Motion for Summary Judgment under the proper legal standard, the Court construes the record, including all evidence and factual inferences, in the light most favorable to Connell, the non-movant.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Of course, to the extent it becomes necessary to examine Connell's Motion for Summary Judgment, and insofar as that Motion might appear to have merit, the Court would be required to take Citi's evidence as true and to draw all justifiable inferences in Citi's favor.

and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." (*Id.*)

    **B.      The History of the Note.**

        Initially, Citi had no involvement with the Note or the Mortgage; however, that changed (at least with respect to the Note) within weeks after execution of the original loan documents. On or about July 2, 2008, Citi purchased the Note from First Federal, and wired payment to First Federal. (Hall Aff., ¶ 6 & Exhs. 3-4; Wood Decl. (doc. 37, Exh. 2), ¶ 8; Wood Dep., at 53.) On that same date, and pursuant to the sale, First Federal indorsed and assigned the Note to Citi via the notation, "Pay to the order of: CitiMortgage, Inc. without recourse First Federal Bank." (Hall Aff., ¶ 6 & Exh. 5; Wood Decl., ¶ 8 & Exh. C.) First Federal promptly delivered the original, indorsed Note to Citi, and Citi took possession of it on that very day. (*Id.*; Wood Decl., ¶ 8.)[5] From July 2008 forward through the time of foreclosure, Citi continuously retained physical possession of the Note. (Wood Decl., ¶ 9.)

        In connection with this transfer, Citi notified the Connells by letter dated July 9, 2008 that all future payments on the Note should be made directly to Citi, not to First Federal. (Wood Decl., ¶ 12 & Exh. E.) The Connells complied. Citi sent the Connells a steady stream of statements and correspondence regarding loan status and payment obligations during the next two years. (*Id.*, ¶ 13 & Exhs. F, G.) All payments made by the Connells on the Note after July 9, 2008 were made to Citi, with no such payments being made to MERS; moreover, the Connells' inquiries concerning their delinquent payment status and possible loan modifications or forbearance arrangements were directed to and answered by Citi, not MERS or anyone else. (*Id.*; Plaintiff's Responses to Requests for Admission (doc. 37, Exh. 6), at #1.)

        Although Citi retained physical possession of the Note at all times after July 2, 2008, another entity entered the picture in August 2008. In particular, as of August 18, 2008, a tracking report for this loan known as the "MERS Milestone Report" reflects that the

---

        [5]      In plaintiff's principal brief, she characterizes these facts as being that Citi "became the servicer of the loan" on July 3, 2008. (Doc. 40, at 2.) But uncontroverted evidence in the record shows that Citi did far more than just become the "servicer;" rather, Citi actually purchased the Note from First Federal, such that Citi effectively became the "Lender" for all purposes. Although her briefs periodically belittle the nature and extent of Citi's interest, plaintiff does not identify record facts that might reasonably support an inference that Citi did not own the Connells' debt obligation as of July 2008 and early July 2010.

Government National Mortgage Association ("Ginnie Mae") became the "New Investor" on that loan. (Wood Decl., Exh. D.) What happened at that time was that the Connells' loan went into a mortgage-backed securities pool insured by Ginnie Mae. (Wood Decl., ¶ 10.) The Connells' loan remained in the pool until June 29, 2010, at which time it was removed from the Ginnie Mae pool, prompting the MERS Milestone Report to list Citi as the "New Investor." (*Id.*, ¶ 10 & Exh. D.) So the "investor" on the loan was transferred from Citi to Ginnie Mae on August 18, 2008, and transferred back to Citi on June 29, 2010. (Wood Dep., at 60-63.) According to Citi's witness, a "transfer of investor" is not the same as a "transfer of ownership," because "[t]he investor backs the loan. They don't own the debt." (*Id.* at 61-62.) In connection with this "transfer of investor," Citi did not indorse the Note to Ginnie Mae. (*Id.* at 64.)[6] When the "investor" was transferred from Ginnie Mae to Citi in June 2010, it is undisputed that Citi did not send the Connells a written notice disclosing that it was the "new owner or assignee of the debt" pursuant to 15 U.S.C. § 1641(g).

As a factual matter, the relationship between MERS and the Note is clear in the record. MERS never held or owned the Note or the underlying debt obligation with respect to the Connells' loan.[7] This is true both during the period in which First Federal was the lender and the period in which Citi was the lender. (Hall Aff., ¶ 7; Wood Decl, ¶¶ 19-20.) None of the Connells' mortgage payments were made to MERS, and MERS had no involvement whatsoever in any discussions between Citi and the Connells regarding delinquency, forbearance and similar

---

[6]    From the Connells' standpoint as borrowers, the "transfer of investor" to Ginnie Mae appears to have been inconsequential. During the August 2008 to June 2010 period when Ginnie Mae was the investor of record, the Connells continued making mortgage payments directly to Citi. (Wood Decl., ¶ 13 & Exh. F.) And all correspondence concerning possible loan modifications, forbearance, delinquency and default issues was between Citi and the Connells. (*Id.*, ¶ 14 & Exh. G.) Ginnie Mae had no involvement in these processes.

[7]    This fact is consistent with MERS' documents for its members, including a "Terms and Conditions" document stating that "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner" and that "MERS shall have no rights whatsoever to any payments made on account of such mortgage loans." (Wood Decl. II (doc. 43, Exh. 1), at Exh. A, ¶¶ 2-3.) These statements are also consistent with other record evidence that "MERS' function is to hold legal title to security instruments securing loans owned or serviced by its members, such as [Citi], solely as nominee for those members. MERS never actually owns or holds the underlying debt obligation." (Wood Decl., ¶ 20.)

issues.  (Wood Decl., ¶¶ 14, 21.)  Neither First Federal nor Citi ever conveyed the Note or debt obligation to MERS; indeed, the record contains no evidence that MERS ever owned or was assigned the Note or the Connells' debt obligation, whether at the inception of the loan transaction or thereafter.[8]  To the contrary, both the MERS Milestone Report and title reports performed for the Property in connection with the foreclosure were devoid of any indication that MERS ever held any interest in the Note or in the Connells' repayment of the loan.  (Coley Aff. (doc. 37, Exh. 7), ¶ 10; Wood Decl., Exh. D.)

> ### C.   The History of the Mortgage.

The history of the Connells' Mortgage is unambiguous.  As discussed *supra*, the Mortgage on its face recited that MERS was the mortgagee, that MERS held legal title to the Mortgage, and that the Mortgage was given to MERS solely in its capacity as nominee for the First Federal and First Federal's assigns (which would include Citi).  (Doc. 40, Exh. 1.)

MERS retained the Mortgage and mortgagee status until July 12, 2010, when it executed an Assignment of Mortgage in favor of Citi.  (Doc. 40, Exh. 6.)  This assignment reflected that MERS was transferring, assigning, setting over and conveying unto Citi "all right, title and interest of [MERS] in and to that certain Mortgage … dated the 13th day of June, 2008, … together with the note and indebtedness secured by the Mortgage, and all interest of [MERS] in and to the property described in said Mortgage."  (Doc. 40, Exh. 6.)   This assignment was made for the administrative purpose of giving Citi formal legal title to the Mortgage so that Citi could pursue foreclosure proceedings against the Connells, who had by that time defaulted on their repayment obligations pursuant to the Note and Mortgage.  (Wood Decl., ¶ 16.)

The parties agree that the July 12, 2010 Assignment of Mortgage was effective to transfer MERS's interests in the Mortgage to Citi; however, they dispute whether any other interests

---

[8]      In her principal brief, plaintiff asserts that "Citi's witness admited [*sic*] that MERS held legal title to the Connells' loan."  (Doc. 40, at 2.)  This mischaracterization of the record will not be credited.  The deposition excerpt from Citi witness Susan A. Wood that plaintiff cites in support of this proposition says nothing about the Connells' loan, specifically.  Moreover, Wood's testimony during the same deposition was crystal clear that, with respect to the Connells' loan, "MERS never owned the debt. … They were simply the nominee on title only."  (Wood Dep., at 90.)  When plaintiff's counsel pressed her on that issue, Wood was emphatic that MERS "didn't own the debt."  (*Id.* at 97, 98.)  So for plaintiff's counsel to argue that Wood admitted that MERS owned the loan is an unreasonable distortion of her testimony.

were transferred via that Assignment, and whether any such transfer gives rise to a TILA disclosure obligation.  It is undisputed, however, that when MERS executed the Assignment of Mortgage in Citi's favor, Citi never sent the Connells a written notice disclosing that it was the "new owner or assignee of the debt" under 15 U.S.C. § 1641(g).

> **D.     The Foreclosure.**

The Connells consistently failed to make timely mortgage payments, and often were 30-60 days delinquent on their loan.  (Wood Decl., ¶ 14.)  Eventually, the Connells ceased making payments altogether after March 31, 2010, and remained in default thereafter.  (*Id.*)  On May 10, 2010, Citi sent a letter to the Connells notifying them that their loan was in default, with a past due amount of $7,397.11.  (*Id.,* at Exh. G, Bates #337.)  When the Connells failed to cure this default in a timely manner, Citi referred the loan to outside counsel for foreclosure, and forwarded a letter to that effect to the Connells on June 16, 2010.  (*Id.*, ¶ 15 & Exh. H.)   On September 17, 2010, Citi's outside counsel sent a "Notice of Acceleration of Promissory Note and Mortgage" to the Connells notifying them that their Note and Mortgage were in default, that Citi was accelerating the entire remaining unpaid balance of the debt, that the total amount due and owing was $222,072.16, and that Citi was commencing foreclosure proceedings.  (Doc. 40, Exh. 5.)

Citi foreclosed on the Property on December 3, 2010, and purchased the Property at the foreclosure sale for the sum of $227,401.13.  (Wood Decl., ¶ 17 & Exh. I.)[9]  In 2011, Sherron Connell filed suit against Citi in this District Court, alleging that Citi had violated TILA (and specifically § 1641(g)) by failing to provide written notice to her of its "new owner" or "new creditor" status in connection with the July 12, 2010 transfer from MERS to Citi.  Both parties have moved for summary judgment on this singular narrow statutory claim.

---

[9]     From that point forward, Citi and the Connells chose a litigious path to resolve their differences.  When the Connells refused to leave the Property after the foreclosure sale, Citi filed an ejectment suit against them in state court.  (Doc. 40, Exh. 9.)  The Connells then filed counterclaims against Citi for wrongful foreclosure, breach of mortgage, and so on.  That state court action was settled.  (Doc. 40, at 3-4.)  However, the parties did not resolve the totality of their differences at that time; rather, they left open Sherron Connell's TILA claim under § 1641(g), which then morphed into its very own federal lawsuit that has consumed extensive litigant and judicial resources spanning the last 15 months.

**III.      Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The law is clear that "[t]he applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment."  *Page v. Winn-Dixie Montgomery, Inc.*, 702 F. Supp.2d 1334, 1345 (S.D. Ala. 2010) (citations omitted); *see also Murray v. Holiday Isle, LLC*, 620 F. Supp.2d 1302, 1307 (S.D. Ala. 2009) (same).  The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted); *see also Wermager v. Cormorant Tp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983) ("the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits").  Nonetheless, "cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories

and material facts." *Page*, 702 F. Supp.2d at 1345 (citations omitted); *see also Murray*, 620 F. Supp.2d at 1307.

## IV.    Analysis.

Slicing through the rhetoric piled high amidst layers of facts and law, the question undergirding this litigation is a simple one. Citi did not disclose to Connell that it was the "new owner or assignee of the debt" in mid-2010. Was Citi required to do so under TILA?

Consistent with the parties' briefing, the Court applies a three-stage analysis of the issues joined on summary judgment. First, the Court will review the language and meaning of § 1641(g), with an eye towards identifying when that provision's disclosure obligation is activated. Second, the Court will turn to Connell's argument in summary judgment briefing that the June 2010 transfer from Ginnie Mae to Citi created a § 1641(g) disclosure obligation for Citi. Third, the Court will examine whether the July 2010 Assignment of Mortgage from MERS to Citi gave rise to a § 1641(g) disclosure obligation for Citi.

### A.    *TILA's Disclosure Requirement at § 1641(g).*

Section 1641(g) provides for "Notice of New Creditor" as follows:

> "[N]ot later than 30 days after the date on which a ***mortgage loan is sold or otherwise transferred or assigned to a third party***, the creditor that is the ***new owner or assignee of the debt*** shall notify the borrower in writing of such transfer, including – (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor."

15 U.S.C. § 1641(g)(1) (emphasis added). For purposes of this section, TILA defines the term "mortgage loan" to mean "any consumer credit transaction that is secured by the principal dwelling of a consumer." § 1641(g)(2). According to the statute, then, the "mortgage loan" is the credit transaction itself (*i.e.*, the Note), not the instrument securing that credit transaction (*i.e.*, the Mortgage).

By its clear terms, "Section 1641(g) imposes a notification obligation on the 'new creditor' or 'new owner or assignee of the debt.'" *Reed v. Chase Home Finance, LLC*, --- F. Supp.2d ----, 2012 WL 4381473, *4 (S.D. Ala. Sept. 26, 2012); *see also Jara v. Aurora Loan Services*, 852 F. Supp.2d 1204, 1208 (N.D. Cal. 2012) ("15 U.S.C. § 1641(g) only applies to creditors who are new owners or assignees of mortgage loan[s]"); *Hale v. World Sav. Bank*, 2012 WL 4675561, *3 (E.D. Cal. Oct. 1, 2012) (§ 1641(g) "only applies to the 'new owner or

assignee' of the debt").  Regulation Z, which implements this section, provides that a person is covered by § 1641(g) if he or she "becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer."  12 C.F.R. § 1026.39(a)(1).  The regulation confirms that the § 1641(g) duty to disclose takes effect when one purchases or is assigned a debt obligation that is secured by a mortgage.  The Connells' debt obligation was plainly secured by a mortgage, so the relevant question is when Citi purchased or was assigned that debt obligation.

> ### B.   *The Ginnie Mae Transfer of June 29, 2010.*

The focus of this case from its inception has been the MERS Assignment of Mortgage dated July 2010.  Before reaching that core issue, however, the Court pauses to debunk an alternative theory for TILA liability that plaintiff floats in her summary judgment briefing. Indeed, Connell repeatedly argues that she is entitled to summary judgment (and that Citi is not) because a § 1641(g) disclosure obligation was triggered by virtue of Citi's purported "repurchase" of the loan from Ginnie Mae in June 2010, yet Citi failed to provide the required disclosure at that time.  For example, in opposing defendant's Rule 56 Motion, Connell discusses the Ginnie Mae transfers at length, concluding that "the loan was sold to Ginnie Mae subsequent to the 2008 endorsement and that it was voluntarily repurchased by Citi in June 2010 …. According to Reg. Z and the Board's comments, such voluntary repurchase triggers the Section 1641(g) requirements."  (Doc. 47, at 15.)[10]

The parties clash as to whether Ginnie Mae transfers of "investor" status can support § 1641(g) liability.  Although this is an interesting question, the Court does not and cannot reach the merits of whether Citi did or did not owe Connell a disclosure obligation under § 1641(g) after the Connells' loan was transferred out of the Ginnie Mae pool on June 29, 2010.  Rather, this asserted basis of liability suffers from at least two distinct threshold defects.

---

[10]      Similarly, in support of her own Rule 56 Motion, Connell devotes nearly half of her reply to the Ginnie Mae issue, under the heading "There is No Exemption for Ginnie Mae Transactions."  (Doc. 49, at 1-3.)  Plaintiff summarizes her point as follows:  "[N]ot only is there no blanket exception under the final version of the regulations for transfers from Ginnie Mae, it is clear that the Board intended that a voluntary repurchase out of a pool, as happened here, would trigger the requirement for a Section 1641(g) notice."  (*Id.* at 3.)  Thus, plaintiff's summary judgment filings reflect that she is predicating her § 1641(g) cause of action, at least in part, on Citi's failure to provide disclosures after the June 2010 transfer from Ginnie Mae to Citi.

First, defendant correctly points out that Connell's Complaint does not recite the Ginnie Mae transfer as a factual basis for her § 1641(g) cause of action against Citi.  The June 29, 2010 transfer is not mentioned in the Complaint.  Rather, Connell's Complaint focuses exclusively on the July 12, 2010 Assignment of Mortgage from MERS to Citi; states that "on July 12, 2010, ownership interest in the Plaintiff's mortgage and note was assigned to Citi;" alleges that "[u]pon receipt of that assignment Citi was required to notify Plaintiff in writing of such transfer, within 30 days;" and contends that "Citi failed to notify Plaintiff at all."  (Doc. 2, ¶¶ 6, 14-15.)  These allegations do not fairly place Citi on notice that Connell's § 1641(g) claim rests on Citi's failure to make TILA disclosures when the loan was transferred out of the Ginnie Mae pool on June 29, 2010; therefore, the Ginnie Mae claim is not part of the case.  *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) ("The point [of Rule 8(a)(2), Fed.R.Civ.P.] is to give the defendant fair notice of what the claim is and the grounds upon which it rests.") (citations and internal quotation marks omitted).  Nothing in the Complaint would give Citi any inkling that Connell wished to hold it liable for non-disclosure as a result of the Ginnie Mae transfer, as opposed to the MERS Assignment of Mortgage.

Under the law of this Circuit, the liberal pleading standard of Rule 8 "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. … A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).[11]  Connell's Complaint unequivocally specifies that she seeks to hold Citi liable under TILA for failing to provide § 1641(g) disclosures based on the MERS Assignment of Mortgage.  For that reason, plaintiff cannot properly argue for the first time on summary judgment that she seeks to hold Citi

---

[11]    *See also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *Schambeau Properties, LP v. Waffle House, Inc.*, 2011 WL 6934817, *5 (S.D. Ala. Dec. 30, 2011) ("Plaintiff's *de facto* attempt to amend its pleadings via summary judgment response to assert a brand new, unpleaded set of facts and circumstances giving rise to ASI's liability is impermissible."); *Cochran v. JP Morgan Chase, N.A.*, 2012 WL 5247299, *4 (M.D. Tenn. Sept. 19, 2012) ("Generally, a plaintiff cannot assert new causes of actions or claims in a response to a motion for summary judgment which are not contained in his pleadings.").

liable under TILA for failing to provide § 1641(g) disclosures based on an earlier Ginnie Mae transfer.

 Second, even if the Complaint did allege that Citi's duty to disclose was triggered by the Ginnie Mae transfer (which it plainly does not), defendant is correct that such a § 1641(g) cause of action would be time-barred.  A plaintiff's TILA claims are subject to a one-year statute of limitations.  *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court … within one year from the date of the occurrence of the violation ….").[12]  It is uncontroverted that the Ginnie Mae transfer occurred on June 29, 2010.  (Wood Decl., ¶ 10 & Exh. D.)  Therefore, the one-year limitations period prescribed by § 1640(e) for Connell to bring a TILA claim against Citi for failure to provide § 1641(g) disclosures in connection with that Ginnie Mae transfer expired on July 29, 2011 (or one year after the 30-day disclosure window expired for the alleged disclosure-triggering event).[13]  Plaintiff did not file her Complaint in this District Court until August 4, 2011, which is outside the 1-year limitations period established by § 1640(e).  Faced with this argument, plaintiff offers no explanation or reasoning as to how her § 1641(g) claim could possibly be timely insofar as it is predicated on a transfer as to which the 30-day period for any disclosure obligation expired more than a year before the Complaint was filed.

 In short, Connell has not pleaded a § 1641(g) claim against Citi based on defendant's failure to provide disclosure when the loan was transferred out of the Ginnie Mae pool.  Even if

---

[12] *See also Bittinger v. Wells Fargo Bank NA*, 744 F. Supp.2d 619, 628 (S.D. Tex. 2010) ("A one-year statute of limitations governs claims under the TILA."); *Knowles v. HBSC Bank USA*, 2012 WL 2153436, *3 (N.D. Ala. June 8, 2012) ("A borrower must bring an action for damages based on a faulty disclosure within one year from the date the violation occurs."); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 2277931, *5 (N.D. Cal. June 18, 2012) (recognizing that "[t]here is a one-year statute of limitations for violations of" § 1641(g)).

[13] *See Squires v. BAC Home Loans Servicing, LP*, 2011 WL 5966948, *2 (S.D. Ala. Nov. 29, 2011) (determining that a § 1641(g) claim accrues for limitations purposes not on the date of the transfer, but upon expiration of the 30-day statutory window for the requisite disclosures, such that one-year limitations period begins to run 30 days after transfer that triggered disclosure obligation); *Knowles*, 2012 WL 2153436, at *3 n.5 (adopting *Squires* method of accrual of § 1641(g) cause of action); *McDonald v. OneWest Bank, FSB*, 2012 WL 555147, *3 (W.D. Wash. Feb. 21, 2012) ("The alleged violation occurred on or about February 26, 2010, when the 30-day notice period expired without OneWest having furnished the required notice.").

she had, that claim would be time-barred by operation of § 1640(e). For both of these reasons, plaintiff's attempt to evade Citi's summary judgment request by shifting the focus to the Ginnie Mae transfer is unavailing. The Ginnie Mae transfer is a non-issue in this case, and this Court need not weigh in on the parties' vigorous debate over whether § 1641(g) obligations arise in the circumstance of such transfers into and out of Ginnie Mae asset pools.

### C.    *The MERS Transfer of July 12, 2010.*

The central issue in this case is and always has been whether the Assignment of Mortgage executed by MERS in favor of Citi suffices to trigger the § 1641(g) disclosure obligation. As the facts relating to that Assignment of Mortgage are largely undisputed, this question is ideally suited for resolution on summary judgment as a matter of law.

The starting point of the analysis is the statutory language itself. Again, TILA imposes this disclosure obligation only when "a mortgage loan is sold or otherwise transferred or assigned to a third party," and only on a "new creditor," or "the creditor that is the new owner or assignee of the debt." 15 U.S.C. § 1641(g). A plain reading of this provision reflects that the disclosure obligation is activated only when ownership of the "mortgage loan" or "debt" is transferred. This reading is reinforced by Regulation Z's specification that § 1641(g) applies only when a new entity "acquir[es] legal title to the debt obligation." 12 C.F.R. § 1026.39(a)(1). Furthermore, case law confirms that what matters for § 1641(g) purposes is transfer of the debt obligation, not merely assignment of the mortgage.[14] Finally, Connell acknowledges that the §

---

[14]    *See, e.g., Foley v. Wells Fargo Bank, N.A.*, 2012 WL 4829124, *3 (S.D. Fla. Sept. 28, 2012) (MERS' execution of written assignment of mortgage to Wells Fargo did not trigger § 1641(g) obligation because assignment of mortgage alone "did not render Wells Fargo the creditor that is the new owner or assignee of the debt") (internal quotation marks and emphasis omitted); *Rivera v. Recontrust Co., N.A.*, 2012 WL 2190710, *4 (D. Nev. June 14, 2012) ("TILA applies only to transfers of an obligation"); *Sakala v. BAC Home Loans Servicing, LP*, 2011 WL 719482, *8 (D. Haw. Feb. 22, 2011) ("the notification requirement is triggered only when the mortgage loan is sold, transferred, or assigned" and imposes an obligation only on "the new owner or assignee of the debt"). Of course, notes and mortgages are conceptually distinct. "Clearly, the Note is the obligation to pay borrowed money, [while] the mortgage merely creates a lien against the property as security for that obligation." *Knowles*, 2012 WL 2153436, at *2 n.4. Plaintiff properly concedes that there is a difference between legal title to a debt obligation, on the one hand, and legal title to a mortgage, on the other. (*See* doc. 49, at 3 ("Plaintiff recognizes a difference between legal title to the obligation and legal title to the security.").) Notwithstanding this concession, plaintiff proceeds in her brief to jumble these two distinct concepts into an undifferentiated mishmash. (*See* doc. 47, at 10 ("The status of mortgagee of (Continued)

1641(g) disclosure obligation "is triggered by the transfer [of] legal title to the debt obligation." (Doc. 47, at 5.)  Considering all these items collectively, then, Citi owed § 1641(g) disclosures to Connell only if Citi was a "new owner or assignee of the debt" arising from a transfer of ownership of the debt obligation (not the mortgage) after the May 2009 effective date of that statute.

Again, the sole transaction on which Connell predicates her § 1641(g) cause of action against Citi is the "Assignment of Mortgage" from MERS to Citi dated July 12, 2010.  But that was an assignment of MERS's interest in the Mortgage, which transfer does not trigger § 1641(g) because (as shown by the discussion *supra*) it is not a transfer of ownership of the debt obligation.  The summary judgment record is pellucidly clear that, from the June 2008 loan date until the July 2010 Assignment of Mortgage, MERS was the mortgagee for the Connells' loan and held legal title to the Mortgage in its capacity as nominee for the original lender (First Federal) and that lender's successors and assigns (such as Citi).  Nothing in the Note or the Mortgage conferred upon MERS a right of ownership in the Note or the underlying debt obligation.  MERS never held the Note.  Neither First Federal nor Citi ever indorsed the Note to MERS.  The Mortgage specified that "MERS holds only legal title to the interests granted by [the Connells] in this Security Instrument."  (Doc. 40, Exh. 1, at 1.)  Neither First Federal nor Citi signed the Mortgage, so that instrument could not have conveyed, transferred or assigned any interest in the Note or underlying debt obligation to MERS.[15]  All of the Connells' dealings concerning the Note (including payments, delinquencies, and requests for forbearance or loan modification) were with Citi, not with MERS.  And MERS' own Terms and Conditions specify that it does not own debt, but that it merely serves "as the mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial

_____

record at least equates to 'apparent ownership' and legal title" of the debt obligation); *id.* at 17-18 ("After the assignment, it became mortgagee of record ….  Through the assignment, it became the 'apparent' owner of the debt ….").)

[15]     To be sure, the Connells did sign the Mortgage.  However, they could not convey to MERS an ownership interest in the debt obligation held by the lender for the simple reason that the Connells were not the lender and possessed no such ownership interest to convey.

owner," with "no rights whatsoever to any payments made on account of such mortgage loans." (Wood Decl. II, Exh. A, at Terms and Conditions ¶ 2.)

The point is straightforward:  MERS never owned an interest in the Connells' debt, so the Assignment of Mortgage dated July 12, 2010 could not have transferred from MERS to Citi any right of ownership to the Note or the debt obligation.  A party cannot assign legal rights or interests that it does not own; rather, an assignment merely enables the assignee to step into the assignor's shoes.  *See, e.g., Certain Underwriters at Lloyd's, London v. Kirkland*, 69 So.3d 98, 102 (Ala. 2011) ("[a] valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses, such that the assignee simply steps into the shoes of the assignor") (citations and internal quotation marks omitted); *Singer Asset Finance Co. v. Connecticut General Life Ins. Co.*, 975 So.2d 375, 380 (Ala. Civ. App. 2007) ("When a party assigns its rights under a contract to an assignee, the assignee steps into the shoes of the assignor and possesses all the rights the assignor originally possessed, but nothing more."); *Knowles v. HBSC Bank USA*, 2012 WL 2153436, *5 (N.D. Ala. June 8, 2012) ("At the time of the May 2011 assignment, Sand Canyon … could only assign whatever interest it still had in the mortgage and note, if any.").  Because MERS held title only to the Mortgage and not the Note, it could not have assigned the Note or any interest in the debt obligation to Citi.  Because the effect of the July 12, 2010 Assignment of Mortgage was to assign only an interest in a Mortgage and not an interest in the underlying loan (which MERS did not have and could not convey), no § 1641(g) obligation was triggered by that Assignment of Mortgage.

Plaintiff's response to this intuitive reasoning is threefold.  First, she insists that the § 1641(g) inquiry turns on the terms of the Assignment of Mortgage, rather than the reality of who owned what.  Specifically, she emphasizes language in the Assignment stating that MERS was assigning to Citi all of its right, title and interest in the Mortgage, "together with the note and indebtedness secured by the Mortgage."  (Doc. 40, Exh. 6.)  Plaintiff urges the Court to hold Citi to the "note and indebtedness" language under Alabama principles of estoppel, and to estop Citi from contesting that the Assignment of Mortgage transferred an ownership interest in the Note. In essence, then, plaintiff would have the Court indulge a fiction that MERS possessed an ownership interest that it did not have, that the Assignment of Mortgage transferred an interest that was not MERS' to transfer, and that Citi did not already own that interest (which it did), all

because the Assignment document utilized broad language to show that MERS was conveying everything it had.

In addition to contravening facts and common sense, plaintiff's suggested approach collides head-on with adverse Alabama precedent. The Alabama Court of Civil Appeals recently opined that, where an Assignment of Mortgage purports to convey MERS' interests in the mortgage (which it has) along with its interests in the note (which it does not have), "the purported written assignment of the note … was 'superfluous.'" *Coleman v. BAC Servicing*, --- So.3d ----, 2012 WL 2362617, *7 (Ala.Civ.App. June 22, 2012). In *Coleman*, the appellate court went on to explain that "insofar as MERS purported to assign the note in 2009, ***the assignment was inoperative*** because MidFirst had already become the entity entitled to enforce the note when it obtained possession of the note four years earlier." *Id.* (emphasis added); *see also Knowles*, 2012 WL 2153436, at *5 ("The assignment of a remaining interest does not automatically assume a transfer in ownership occurred that date," particularly where court has "no evidence before it" that purported assignor "had any interest left to assign").[16] Simply put, then, the portion of the Assignment of Mortgage in which MERS purported to assign its nonexistent interest in the Note to Citi is "superfluous" and "inoperative" under Alabama law, and cannot form the basis of a viable § 1641(g) cause of action against Citi.

Second, plaintiff advances an "apparent ownership" theory under which she reasons that even if the Assignment of Mortgage did not actually transfer any interest in the debt obligation from MERS to Citi, it had the appearance of doing so. Plaintiff theorizes that the mere appearance of a transfer of ownership is sufficient to trigger § 1641(g) disclosure duties. Although the parties spar at length about the validity of this theory, it is unnecessary to wade into

---

[16]     An obvious question is this: If MERS lacked any ownership interest in the Note, then why would MERS include language in its written Assignment of Mortgage that it was also assigning that Note? *Coleman* perceptively and helpfully demystified this conduct as follows: "the purported assignment of the *note* that was included in the … 'Assignment of *Mortgage*' was actually a precautionary measure by MERS, intended to insulate the assignment of the mortgage from the operation of the rule applied in some states that a transfer of the mortgage without a transfer of the debt is void, absent a contrary intent of the original contracting parties." *Id.* at *8. An opportunistic plaintiff such as Connell cannot transform that defensive MERS precautionary drafting measure into a sword to attack a lender's assignee such as Citi under § 1641(g), based on MERS' transfer of a nonexistent legal interest in a debt obligation to defendant.

that debate here.[17]  The fundamental problem with applying an "apparent ownership" argument in this case is that Citi already owned the debt obligation.  This fact is beyond all reasonable dispute.[18]  Citi purchased the Note from First Federal in July 2008 and held it at all times through and after the July 2010 Assignment of Mortgage.  Even if plaintiff were correct that the transfer of the Note into and out of the Ginnie Mae pool somehow constituted a change in ownership of the debt, the inescapable fact remains that ownership of the Note and debt obligation plainly resided solely with Citi as of no later than June 29, 2010 (the date the Connell loan was removed from the Ginnie Mae pool and transferred back to Citi).

Why does this matter?  Well, the statutory language could not be any clearer that a disclosure obligation attaches only where there is a "new creditor" or a "new owner or assignee of the debt."  15 U.S.C. § 1641(g)(1).  Citi was already the owner or assignee of the debt prior to the July 12, 2010 MERS Assignment of Mortgage; therefore, that assignment could not possibly have rendered Citi a "new owner or assignee of the debt."  In other words, the record is clear and undisputed that Citi actually owned the Connells' loan before MERS executed the Assignment of Mortgage.  If Citi was the actual owner of plaintiff's debt obligation on July 11, 2010, then how

---

[17]     The Court does note in passing that this "apparent ownership" argument has not fared well in other § 1641(g) litigation and appears to follow from a highly strained reading of the statute and regulation.  *See, e.g., Foley*, 2012 WL 4829124, at *3 (rejecting "apparent ownership" theory of liability under § 1641(g) because "[n]owhere in § 1641(g) does it say anything about 'apparent ownership.'  Instead the language of the statute refers only to the 'owner or assignee of the debt.'").

[18]     In summary judgment briefing, plaintiff plays fast and loose with the facts by stating that "Citi may have held some equitable or contractual rights in the obligation" and that "prior to the assignment, Citi had … at best, only equitable title to the loan."  (Doc. 47, at 11, 17.)  These conclusory statements casting aspersions on the extent of Citi's ownership interest prior to the July 2010 Assignment of Mortgage are untethered to any record facts.  Here is what the undisputed summary judgment record shows:  (i) Citi bought the Note from the original lender in July 2008; (ii) that original lender indorsed the Note to Citi and transferred physical possession of that Note to Citi; (iii) Citi held the Note at all relevant times thereafter; (iv) all payments, correspondence, and loan modification / forbearance discussions with the Connells from July 2008 onward were exclusively conducted by Citi, not MERS or anyone else; (v) neither First Federal, nor Citi, nor anyone else ever conveyed an interest in the Note to MERS; and (vi) the Ginnie Mae transfer concluded on June 29, 2010, such that Citi unquestionably had full ownership of the Note and debt obligation as of that date.  On summary judgment, the Court is not free to ignore all of these uncontroverted record facts simply because plaintiff finds them inconvenient or wishes that defendant's ownership status were shakier than it actually was.

could it have become a "new owner" with the July 12, 2010 Assignment on an "apparent ownership" theory?  It could not have done so.  A pre-existing owner cannot be a "new owner." Accordingly, any TILA disclosure obligation that Citi might have had existed before that Assignment ever took place, and the July 2010 Assignment could not have made Citi a "new creditor" of a loan that it already owned before the Assignment ever happened.  "Apparent ownership" has no application here, even assuming that it is a viable, cognizable approach to fixing liability under § 1641(g).[19]

Third, plaintiff argues that the Assignment of Mortgage actually did convey some interest in the indebtedness because after that assignment "Citi acted as the lender in every significant way."  (Doc. 47, at 18.)  But of course Citi acted as the lender in every significant way after the July 2010 Assignment of Mortgage.  It had been acting as the lender in every significant way for the previous two years, ever since it actually became the lender by purchasing the Connells' Note and debt obligation from the original lender.  Certainly, there was no reason for it to stop acting as the lender following the July 2010 Assignment of Mortgage.  Citi acted like the lender because it <u>was</u> the lender, just as it had been for some time prior to the Assignment of Mortgage. The Assignment did not alter Citi's lender status or lender behavior in the slightest.  So nothing in Citi's post-Assignment behavior is indicative of any transfer in ownership of the underlying

---

[19]    It appears to the Court that, by arguing "apparent authority," plaintiff is endeavoring to jam a square peg into a round hole.  As plaintiff knows, a recurring fact pattern in many § 1641(g) cases is that a plaintiff seeks to hold a loan servicer liable for TILA disclosures, arguing that the MERS assignment of a mortgage also transferred an ownership interest in the note, sufficient to remove the loan servicer from the "servicer" exemption created by Regulation Z.  In those cases, servicers typically argue that they did not actually own any interest in the note, prompting the plaintiffs to fire back that the mortgage assignment language created "apparent ownership" in the note on the part of the servicer, even if legal ownership vested with some other entity.  So, in that recurring scenario, an "apparent ownership" theory (if it is recognized to be valid) is a tool through which a § 1641(g) plaintiff endeavors to conjure up an interest in the debt obligation on the part of a servicer who has none in actual fact.  By contrast, in this case, Citi was not a mere servicer, but actually owned the debt obligation prior to the MERS Assignment of Mortgage.  So Connell's "apparent ownership" argument is ill-fitting, because she is trying to stack an "apparent ownership" interest atop an existing actual ownership interest, without acknowledging that any § 1641(g) disclosure obligation Citi had would have already been activated by that actual ownership interest, such that "apparent ownership" adds nothing to the analysis other than an unnecessary and superfluous detour.

debt obligation, or any change in status to render Citi a "new creditor" or a "new owner or assignee" of the debt at that time.[20]

**V.    Conclusion.**

For all of the foregoing reasons, the Court finds that, viewing the record in the light most favorable to the plaintiff, plaintiff's TILA cause of action fails as a matter of law.  Defendant was not required to make the disclosures prescribed by 15 U.S.C. § 1641(g) following the July 2010 Assignment of Mortgage because defendant already owned the underlying debt obligation, such that the Assignment did not render defendant a "new creditor" or "new owner or assignee of the debt" as required to trigger the § 1641(g) disclosures.  Accordingly, it is **ordered** as follows:

1.    Defendant's Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority (doc. 55) is **granted**;

2.    Defendant's Motion for Summary Judgment (doc. 36) is **granted**;

3.    Plaintiff's Motion for Summary Judgment (doc. 39) is **denied**;

4.    There being no genuine issues of material fact as to any claim or cause of action asserted herein, this action is **dismissed with prejudice**; and

5.    A separate judgment will enter.

DONE and ORDERED this 13th day of November, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[20]    To be sure, Connell argues at length that Citi could not have proceeded to foreclosure without the Assignment of Mortgage.  That is true.  As already discussed, however, ownership of the debt obligation (which is the relevant question for § 1641(g) purposes) is a distinct and independent inquiry from possession of the right to foreclose (which does not matter for § 1641(g) purposes).  Again, § 1641(g) is triggered when "a mortgage loan is sold or otherwise transferred or assigned to a … new owner or assignee."  The "mortgage loan" is the debt obligation itself.  It is not the security interest accompanying the debt obligation.  It is not the right to foreclose.  Once again, plaintiff muddles the very distinctions that she acknowledges elsewhere in summary judgment briefing, in a futile attempt to manufacture a § 1641(g) violation where none exists.  Citi already was Connell's lender and the owner of her debt obligation.  As such, the Assignment of Mortgage did not render Citi a "new owner or assignee" of that debt obligation, and did not give rise to any TILA disclosure obligations, as a matter of law.